UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ANTHONY J. CARONE, FRANK V. CARONE, CRYSTAL CHEN, AND YAN PO ZHU,<br><br>Defendants. | : | No. 1:26-cr-00177 (KAM) |

**DEFENDANTS ANTHONY J. CARONE, FRANK V. CARONE, CRYSTAL CHEN, AND YAN PO ZHU'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A BILL OF PARTICULARS**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........ 1

PROCEDURAL HISTORY ........ 3

BACKGROUND ........ 4

LEGAL STANDARD ........ 10

ARGUMENT ........ 11

I. The Indictment Fails to Adequately Specify When and Where the Alleged Corrupt Agreement Was Formed, Or What Constituted Formation of the Agreement. ........ 11

II. The Indictment Fails to Adequately Specify the Official Act(s) Taken by Frank Carone Pursuant to the Alleged Corrupt Agreement. ........ 13

III. The Indictment Fails to Adequately Specify Whether the Obstruction of Justice Count Is Limited to the Conduct Alleged in Paragraph 47 of the Indictment. ........ 16

CONCLUSION ........ 18

# TABLE OF AUTHORITIES

**Case** **Page(s)**

*McDonnell v. United States,*
579 U.S. 550 (2016) ........ 10, 13, 14

*United States v. Aliperti,*
867 F. Supp. 142 (E.D.N.Y. 1994) ........ 15

*United States v. Barnes,*
158 F.3d 662 (2d Cir. 1998) ........ 17

*United States v. Bazezew,*
783 F. Supp. 2d 160 (D.D.C. 2011) ........ 11, 12, 13

*United States v. Bortnovsky,*
820 F.2d 572 (2d Cir. 1987) ........ 10, 13, 17

*United States v. Espy,*
989 F. Supp. 17 (D.D.C. 1997) ........ 2, 11, 14

*United States v. Falcon,*
347 F.3d 1000 (7th Cir. 2003) ........ 3

*United States v. Kaplan,*
490 F.3d 110, 128 (2d Cir. 2007) ........ 18

*United States v. Lino,*
2001 WL 8356 (S.D.N.Y. Jan. 2, 2001) ........ 2, 10, 15, 17

*United States v. Nekritin,*
2011 WL 1674799 (E.D.N.Y. May 3, 2011) ........ 11, 17

*United States v. Ramirez,*
602 F. Supp. 783 (S.D.N.Y. 1985) ........ 15, 18

*United States v. Rinsch,*
807 F. Supp. 3d 238 (S.D.N.Y. 2025) ........ 17

*United States v. Scully,*
No. 14-CR-208 (ADS) (SIL) (E.D.N.Y. June 8, 2015) ........ 18

*United States v. Siddiqi,*
2007 WL 549420 (S.D.N.Y. Feb. 21, 2007) ........ 13

*United States v. Silver,*

864 F.3d 102 (2d Cir. 2017)........................................................................................ 14

*United States v. Silver,*
948 F.3d 538 (2d Cir. 2020)........................................................................................ 15

*United States v. Snyder*,
603 U.S. 1, 19 (2024)............................................................................................. 12, 13

*United States v. St. Germain,*
2001 WL 34284344 (2d Cir. May 16, 2001), ............................................................. 18

*United States v. St. Germain*,
33 F. App'x 565 (2d Cir. 2002) .................................................................................. 18

*United States v. Taylor,*
707 F. Supp. 696 (S.D.N.Y. 1989) ............................................................................. 11

*United States v. Torres,*
901 F.2d 205 (2d Cir. 1990)........................................................................................ 10

*United States v. Trie,*
21 F. Supp. 2d 7 (D.D.C. 1998) ................................................................................. 10

**Statutes**

Fed. R. Crim. P.7(f) ............................................................................................. 1, 10

**PRELIMINARY STATEMENT**

Defendants Frank Carone, Anthony Carone, Crystal Chen, and Yan Po Zhu respectfully submit this memorandum of law in support of their motion for a bill of particulars pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure. The Indictment alleges that Defendants engaged in a criminal scheme to "steer" an emergency migrant housing contract to the Microtel, a hotel in Long Island City owned by Mr. Zhu. Each one of the government's nine alleged corruption charges depends on a corrupt quid pro quo pursuant to which Frank Carone allegedly agreed to take official action to benefit Mr. Zhu in exchange for payment.

But the Indictment, despite its 29-page length, is silent as to the key facts that would support the government's theory of a crime. As to the formation of the purported corrupt agreement, the government alleges only that it took place "[i]n or about and between June 2022 and December 2023." Ind. ¶ 14. While replete with details of purported social interactions among Defendants and with certain unnamed City Hall officials, the Indictment does not include any allegations that identify when or where the alleged corrupt agreement was formed, nor does it specify any communication or event evidencing the formation of the alleged agreement. The Indictment also does not specify the official act or acts that Frank Carone is alleged to have performed in connection with the purported agreement, or even whether the supposed official act(s) took place before or after the formation of the purported agreement.

The discovery produced by the government to date muddies the picture even further. Text messages and other communications produced in discovery, as well as significant Brady material provided by the government, not only fail to show any corrupt agreement among Defendants or official act(s) performed by Frank Carone but also contradict the Indictment's timeline and narrative of events.

Because the Indictment fails to identify with sufficient particularity the nature of the

charges against them, Defendants seek particulars on: (1) the formation of the alleged corrupt agreement between Frank Carone and Mr. Zhu, including when and where the agreement was allegedly reached; and (2) the official act or acts that Frank Carone allegedly performed, or caused to be performed, pursuant to the alleged corrupt agreement. In addition, Frank Carone and Anthony Carone also seek particulars with respect to Count Ten of the Indictment, which charges them with obstruction of justice for allegedly obstructing a federal grand jury investigation. Count Ten does not contain a "to wit" clause or otherwise identify any particular conduct that constitutes obstruction of justice. The government should be required to specify whether Count Ten is limited to the conduct described in Paragraph 47 of the Indictment, and if not, what additional conduct relating to alleged obstruction the government intends to prove.[1]

Without these requested particulars, Defendants cannot adequately prepare for trial, as they will not be on notice of the most important aspects of the charges against them. Defendants would be relegated to defending themselves against a moving target—not knowing when or under what circumstances they are alleged to have entered into a bribery scheme nor what specific alleged acts were taken in exchange or when they occurred, nor what action(s) constitute alleged obstruction of justice. The requested particulars also are necessary for Defendants to decide whether to file motions to dismiss the Indictment in advance of trial.

In cases involving public corruption charges, courts routinely require the government to provide the kinds of information sought here. *See, e.g.*, *United States v. Espy*, 989 F. Supp. 17, 34–35 (D.D.C. 1997) (granting bill of particulars requiring government to specify "the conduct, date, place and substance of each official act" in a bribery case), *aff'd in part, rev'd in part on other grounds*, *United States v. Espy*, 145 F.3d 1369 (D.C. Cir. 1998); *United States v. Lino*, 2001

[1] Defendants Crystal Chen and Yan Po Zhu join this motion in all aspects with the exception of the requests pertaining to Count Ten, which apply only to Frank Carone and Anthony Carone.

WL 8356, at *3–6 (S.D.N.Y. Jan. 2, 2001) (granting bill of particulars requiring specification of the "nature and circumstances" of the bribery arrangement); *United States v. Falcon*, 347 F.3d 1000, 1002 (7th Cir. 2003) (requiring the government to provide additional information about the factual and legal bases for obstruction charges).

In a prosecution with multiple terabytes of discovery, following an investigation that lasted well over two years prior to Indictment, it should not be difficult for the government to provide the particulars requested here. Defendants should not be left guessing as to the central corruption and obstruction allegations that the government will need to prove at trial.

## PROCEDURAL HISTORY

At the initial pretrial conference in this matter held on July 1, 2026, Defendants raised the lack of particulars related to core aspects of the charges and said that they intended to meet and confer with the government to try to avoid motion practice on this issue. July 1 Status Conference Tr.at 16-19. In response, the Court stated: "I would appreciate it if the government would be as forthcoming despite its lengthy indictment and provide information to avoid motion practice of this type." *Id.* at 17.

On July 6, 2026, Defendants outlined for the government the same omissions set forth herein and asked if the government would agree to provide the particulars Defendants are requesting. On July 8, 2026, Defendants asked the government for a response no later than July 22, 2026, in order to know whether a motion would be required in advance of the July 27, 2026 status conference. The government did not respond in advance of the July 27 conference.

During the July 27 status conference, Defendants raised the issue with the Court again to indicate that a motion may be required. Specifically, counsel for Frank Carone informed the Court that Defendants had requested particulars on "the date and location of the alleged corrupt

agreement in this case and the official act or actions that Mr. Carone is alleged to have taken." July 27 Status Conference Tr.at 11. In response, the Court directed the government to "please provide the information if you can," because "I think [Defendants] are entitled to know it." *Id.* at 11-12.

Subsequently, during a call between the government and counsel for Frank and Anthony Carone on July 31, 2026, the government stated that they did not believe particulars were warranted, on the basis that in their view the Indictment provided sufficient detail. On August 4, 2026, the government told Defendants in writing that they would not provide additional particulars absent a Court order. The government stated:

> As discussed during last Friday's call, we do not believe a bill of particulars is warranted in this case. As you know, a bill of particulars is appropriate only "where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999) (quoting United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990)). Here, the 29-page indictment contains specific details describing the particulars of the alleged bribery scheme. It includes relevant text messages, Ind. ¶¶ 18-19, 23, 26-27, 29, 45-46, 50(a)-(b), 50(d), emails, id. ¶¶ 44, 50(c), financial transfers, id. ¶ 50(e), telephone calls, id. ¶ 24, and meetings, id. ¶¶ 16, 27[.] Because the law does not entitle you to additional information, we respectfully decline your request.

In light of the government's position, Defendants believe it is necessary to make this motion.

## BACKGROUND

The Indictment charges Defendants with bribery, honest services fraud, and conspiracy offenses arising from the alleged scheme described in Paragraphs 1–47 of the Indictment (Counts One through Nine). Specifically, the Indictment charges Defendants with conspiracy to commit bribery offenses under 18 U.S.C. § 371 (Count One); federal program bribery under 18 U.S.C. §§ 666(a)(1)(B) and 666(a)(2) (Counts Two and Three); use of interstate facilities to commit bribery

under 18 U.S.C. § 1952 (Count Four); conspiracy to commit honest services wire fraud under 18 U.S.C. § 1349 (Count Five); honest services wire fraud under 18 U.S.C. §§ 1343 and 1346 (Counts Six through Eight); and money laundering conspiracy under 18 U.S.C. § 1956(h) predicated on the same underlying offenses (Count Nine). Each of those counts, as alleged, requires proof of a corrupt agreement pursuant to which Frank Carone accepted payment in exchange for one or more official acts, and proof of official act(s) taken pursuant to that agreement. But the Indictment fails to allege the facts critical to establishing, and defending against, these elements.

First, the Indictment alleges that Defendants engaged in a criminal scheme over the course of a period of eighteen months, between June 2022 and December 2023. Ind. ¶ 14 ("In or about and between June 2022 and December 2023, the defendants ANTHONY J. CARONE, FRANK V. CARONE, CRYSTAL CHEN, and YAN PO ZHU devised and executed a scheme to exploit the City's migrant crisis for profit."). With respect to the alleged agreement at the heart of the charges, the Indictment alleges generically that Frank Carone "agreed to accept a series of bribe payments from ZHU and CHEN through A. CARONE," Ind. ¶ 14, but the Indictment does not identify when or where this alleged corrupt agreement was formed. The Indictment also references a series of text messages, phone calls, and other social interactions spanning the charged period, but none of those communications or meetings indicates one way or the other when or where the supposed agreement between Mr. Zhu and Frank Carone was entered into.

These omissions are particularly problematic because the Indictment contains contradictory allegations regarding when the conspiracy supposedly began. While it alleges, for each of the conspiracy counts, that the conspiracy began "in or about [ ] June 2022," Ind. ¶¶ 14, 49, 52, 54, 58, the Indictment also states that the hotel at issue was rejected as a shelter that same month, Ind. ¶ 16, and alleges no contact between Frank Carone and Mr. Zhu in the following three

months aside from socializing at group gatherings on two occasions, Ind. ¶¶ 17, 22. The Indictment then identifies a text message from Mr. Zhu to Frank Carone on September 19, 2022 stating that Mr. Zhu was "interested in the immigrant emergency program," to which Mr. Carone responded, "what is the address?" Ind. ¶ 23. This exchange is entirely inconsistent with the theory that Frank Carone had agreed months earlier to accept bribe payments in exchange for steering an emergency shelter contract to Mr. Zhu's Microtel.

Further, a text exchange quoted in the Indictment indicates that following the Microtel's approval on October 20, 2022, Mr. Zhu told Ms. Chen that they would not have signed a retainer agreement with Anthony Carone had Consultant #1's application for the Microtel been approved two weeks earlier. Ind. ¶ 36. That statement strongly suggests that Mr. Zhu decided to pay Anthony Carone at some point after October 6, 2022 (two weeks before the Microtel received official approval), contradicting the theory that he and Frank Carone had reached an agreement much earlier, in June or even September. The Indictment does not attempt to resolve these contradictions.

Discovery produced by the government confirms these inconsistencies and further emphasizes the importance of knowing the nature and timing of the agreement the government alleges Defendants entered into. Text messages produced by the government show that on September 19, 2022—the same day that Mayor Adams made public statements about the City's efforts to address the worsening migrant crisis, including Frank Carone's efforts to negotiate housing on cruise ships—Ms. Chen sent a message to Mr. Zhu that said: "That means Frank's helping the boss handle the refugees. So why can't he help us." Approximately one hour later, Mr. Zhu informed Frank Carone that he was "interested in the immigrant emergency program," and that "[i]t would be helpful for my hotel if we can get at a one year program to start right away,

and we can have time to work on long term programs." Two days later, on September 21, 2022, Ms. Chen texted Mr. Zhu, "what did Frank say[?]"

These messages, exchanged three months after the alleged start of the conspiracy, are completely inconsistent with there having been any sort of corrupt agreement "in or about June 2022," Ind. ¶ 14, or any time prior to September 21, 2022. If such an agreement had been reached, there would be no reason for Ms. Chen to speculate in late September about whether Frank Carone could "help us," or for Mr. Zhu to pitch the program to Mr. Carone as something he was "interested in," or for Ms. Chen to ask two days later, "what did Frank say."

Second, the Indictment does not articulate what official act(s) Frank Carone purportedly took, or when or how those official act(s) purportedly occurred. It alleges that Mr. Carone "used his official position to intercede on the Microtel's behalf" and that he "directed" City Official #1 to "reconsider" the Microtel, Ind. ¶¶ 20, 29, 31, but the Indictment never specifies when or where this supposed directive was given or what the "directive" entailed. At its most specific, the Indictment references certain conversations between Frank Carone and City Official #1—a phone call on September 22 and a meeting on September 28—without identifying a single thing to have been said or conveyed during either of those conversations, let alone whether a "directive" of some kind was issued during one or both of them. Ind. ¶¶ 24, 27. Accordingly, Defendants do not know whether the government is alleging the official action was the October 20 approval, one of the communications between Frank Carone and City Official #1, or something else.

Here, too, the discovery does not provide any further illumination, and statements provided by the government as Brady material call into question how the government intends to prove that Frank Carone took any official action at all to benefit Mr. Zhu. For example, the government informed the defense that [redacted]

[redacted] The government further informed the defense that [redacted]

Documents produced in discovery also demonstrate that the individual identified in the Indictment as Consultant #1, who was engaged by Mr. Zhu and Ms. Chen to assist in getting a City contract for the Microtel, pushed the City to approve the emergency migrant housing contract for the Microtel, and was in communication with the office of City Official #1 in the fall of 2022 as part of that process. Consultant #1 submitted the emergency application for the Microtel, learned that it no longer mattered that there was already a shelter next door to the Microtel, and informed Ms. Chen in October 2022—right before the hotel obtained formal approval—that he "literally did everything needed" for approval and that he had the support of City Official #1.[2] This evidence—which suggests that Consultant #1, not Frank Carone, was principally responsible for securing the approval, and that [redacted]

[2] Indeed, after the Microtel was ultimately approved, Consultant #1 filed a lawsuit against Mr. Zhu seeking unpaid fees for Consultant #1's work in securing the emergency housing contract for the Microtel.

[redacted]—highlights the importance of requiring the government to specify what action they allege Frank Carone actually took, and when he did so.[3]

Finally, the Indictment charges Frank and Anthony Carone with obstruction of justice in violation of 18 U.S.C. § 1512(c)(2) (Count Ten). Count Ten alleges that between July 2024 and October 2025, Frank and Anthony Carone "obstruct[ed], influence[d], and imped[ed], and attempt[ed] to obstruct, influence and impede," a federal grand jury investigation. Ind. ¶ 64. However, Count Ten does not itself identify any conduct underlying the obstruction charge. The only alleged conduct that appears related to this charge is described in Paragraph 47 of the Indictment, wherein the government alleges that Frank and Anthony Carone "fabricated evidence" in the form of a promissory note created in July 2024. Ind. ¶ 47. If the basis for Count Ten is limited to the allegations in Paragraph 47, no additional particulars are needed, but if the government intends to rely on additional unidentified conduct to support its obstruction charge it should specify now what that is.

* * *

As explained in more detail below, these critical gaps in the Indictment prevent Defendants from adequately preparing their defenses—including the preparation of pre-trial motions—and avoiding prejudicial surprise at trial. As just one example: Defendants are considering whether to

[3] While the Indictment repeatedly alleges that Frank Carone took official action to steer a contract to the Microtel, *see, e.g.* Ind. ¶ 14 ("In exchange, F. CARONE agreed to steer a multi-million dollar Emergency Shelter Contract to the Microtel"), the emergency housing contract was awarded not to the Microtel, but to the Housing Options & Geriatric Association Resources, Inc. ("HOGAR"), a non-profit organization that operated the Microtel for the purpose of migrant housing. Under the City's procurement rules, prior to awarding the $4 million contract to HOGAR in November 2022, the Department of Homeless Services ("DHS") was required to provide written justification for awarding the contract. Additionally, in November 2023 when the one-year contract with HOGAR expired, DHS extended the term to June 30, 2026, and modified the contractual award to over $14 million. These facts further demonstrate the need for the government to particularize the alleged official act(s) taken by Frank Carone because they indicate that the Microtel was approved for emergency housing use—and granted an extended term for over three times the initial contract amount (well after Frank Carone had left City Hall)—on a legitimate, non-criminal basis.

file a motion to dismiss the bribery counts of the Indictment on the basis that the allegations, even if proven in full, fail to allege a corruption offense under *McDonnell v. United States*, 579 U.S. 550 (2016), and its progeny (holding that arranging meetings with or contacting subordinate officials cannot by themselves form the basis of a bribery charge). But the absence of any allegation that specifies what official act(s) Frank Carone is alleged to have taken or when he took them makes it impossible for the defense, and the Court, to understand what precisely the government is alleging to have taken place and whether it meets the requirements of *McDonnell*.

## LEGAL STANDARD

Under Rule 7(f) of the Federal Rules of Criminal Procedure, a bill of particulars must be granted where the information sought is "necessary to the preparation of [the] defense, and to avoid prejudicial surprise at the trial." *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990), *abrogated on other grounds by United States v. Marcus*, 628 F.3d 36, 41 (2d Cir. 2010). A bill of particulars is appropriate where the indictment fails to identify with sufficient particularity the nature of the charge pending against a defendant. *See United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). This is because a defendant "should not have to waste precious pre-trial preparation time guessing" which of many interactions or events the government will designate as the criminal act "when the government knows precisely" what it intends to prove "and can easily provide the information." *United States v. Trie*, 21 F. Supp. 2d 7, 21 (D.D.C. 1998). A bill of particulars is warranted "even if the effect is disclosure of the government's evidence or theories." *Lino*, 2001 WL 8356, at *3. Further, the government does not fulfill its obligation to provide the necessary particulars "merely by providing mountains of documents to defense counsel who were left unguided as to which documents are relevant to the charged conduct." *United States v. Nekritin*, 2011 WL 1674799, at *7 (E.D.N.Y. May 3, 2011) (KAM) (granting in part bill of particulars motion) (internal citation omitted).

Where the charges center around an alleged corrupt agreement, the government should specify the basis of the alleged agreement and the date and location it was reached. *See United States v. Bazezew*, 783 F. Supp. 2d 160, 168–69 (D.D.C. 2011) (requiring government to provide additional detail regarding dates of conversations between alleged co-conspirators in conspiracy to commit bribery where there was "no suggestion in the Indictment that any of the 16 defendants did anything either before or after [a single overt] act on [a] specific date to join the conspiracy or to further its goals"); *see also United States v. Taylor*, 707 F. Supp. 696, 700 (S.D.N.Y. 1989) (requiring government to disclose exact dates, if known, and locations of meetings or conversations during which defendant allegedly joined conspiracy). Similarly, in bribery cases requiring proof of one or more corrupt official acts, the government is required to specify "the conduct, date, place and substance of each official act referred in the indictment." *Espy*, 989 F. Supp. at 34; *see also Bazezew*, 783 F. Supp. 2d at 168–69 (requiring government to describe overt acts taken by defendants).

## ARGUMENT

### I. The Indictment Fails to Adequately Specify When and Where the Alleged Corrupt Agreement Was Formed, Or What Constituted Formation of the Agreement.

The government should be required to provide specifics regarding the formation of the alleged corrupt agreement at the core of its case. As detailed above, while the Indictment alleges that Defendants engaged in a bribery conspiracy spanning an eighteen-month period, it does not identify when or where the alleged corrupt agreement was formed. Indeed, far from identifying the date, time, and location of the supposedly corrupt agreement, the Indictment is not even internally coherent as to the month in which it was formed, and discovery produced thus far contradicts the Indictment's allegation that the conspiracy began in or about June 2022.

Under the Supreme Court's decision in *United States v. Snyder*, the timing of the corrupt

agreement "is the key" in a § 666 bribery prosecution, as bribery requires that a defendant agree to accept something of value prior to the contemplated or consummated action. 603 U.S. 1, 19 (2024). Without knowing when or where the government contends that the agreement was reached, the government would be permitted to change its theories midstream at trial, and Defendants would be prejudiced in their ability to defend against the charges. That is no doubt why, in other public corruption cases, indictments routinely provide the "when" and "where" that is missing here. For example, the operative indictment in *United States v. Menendez* alleged the dates of meetings between the individuals involved in the bribery scheme, exactly which individuals were present at each meeting, what was discussed, and what was agreed upon. *See United States v. Menendez*, Superseding Ind. ("Menendez Ind.") ¶¶ 19–21, 37, 44, No. 23-cr-490 (S.D.N.Y. Jan. 2, 2024). Likewise, the indictment in *United States v. Smith* alleged the dates of the meetings between the alleged perpetrators of the bribery scheme, the people with whom Halloran was alleged to have entered into a corrupt agreement, and what was agreed upon. *See United States v. Smith*, Ind. ("Halloran Ind.") ¶¶ 20–22, No. 13-cr-297 (S.D.N.Y. Apr. 18, 2013).

Providing the dates of the alleged misconduct is particularly important where, as here, the chronology of events alleged in the indictment is logically inconsistent. In *Bazezew*, for instance, the indictment alleged that the conspiracy began on September 3, 2009, but it did not allege any overt acts in furtherance of the conspiracy until September 11, 2009 for some defendants, September 18 for other defendants, and September 20 for still other defendants. 783 F. Supp. 2d at 168. Considering these inconsistent allegations, the Court ordered the government to provide a bill of particulars specifying the overt acts taken by each of the defendants prior to September 11, September 18, or September 20, respectively, and the date of any conversations between the purported conspirators preceding September 11. *Id.* at 168–69.

Here, particularly in light of the vague and contradictory allegations in the Indictment, as well as discovery produced by the government undermining the Indictment's allegation that the conspiracy began in or around June 2022 or at any point prior to the alleged official act(s), the government should be required to specify when and where the alleged corrupt agreement was formed, and what communication or event constituted its formation. *See Bazezew*, 783 F. Supp. 2d at 168-69; *United States v. Siddiqi*, 2007 WL 549420, at *3–4 (S.D.N.Y. Feb. 21, 2007) (requiring government to identify allegedly corrupt transactions "by date range and substance" so that defendant could "focus his defense efforts on those specific instances," rather than being left to review an entire course of conduct in search of the government's theory); *Bortnovsky*, 820 F.2d at 574–75 (abuse of discretion to deny bill of particulars where defendants were not told which dates and acts within a broad course of conduct were charged as criminal). Without such particulars, Defendants are not on notice, among other things, of whether the government plans to prove there was an agreement that preceded the alleged official act(s) taken by Frank Carone, which is necessary for the charges to stand. *See Snyder*, 603 U.S. at 19 ("[A] state or local official does not violate § 666 if the official has taken the official act before any reward is agreed to, much less given.")

## II. The Indictment Fails to Adequately Specify the Official Act(s) Taken by Frank Carone Pursuant to the Alleged Corrupt Agreement.

The government also should be required to provide specifics regarding the alleged official act(s) performed by Frank Carone. Each of the bribery and honest services fraud charges requires proof that Frank Carone performed a specific official act in exchange for the alleged payments. *See McDonnell*, 579 U.S. 550, at 562, 574 (2016); *United States v. Silver*, 864 F.3d 102, 111, 119 (2d Cir. 2017). But the Indictment never identifies the official act(s) that Frank Carone allegedly took, beyond vaguely alleging that he gave a "directive" to City Official #1 that the City

"reconsider" the Microtel for an emergency shelter contract at an unspecified time. On its own terms, there is a tension between issuing a "directive" and asking an official to "reconsider" a decision. And under *McDonnell*, 579 U.S. at 573–74, that tension could be the difference between permissible and impermissible conduct. If Frank Carone had ordered City Official #1 to approve the Microtel for a contract, that would constitute an official act under *McDonnell*. *See, e.g.*, *McDonnell*, 579 U.S. at 572 (defining "official act" to include "using [an] official position to exert pressure on another official to perform an 'official act'"). But if Frank Carone simply asked City Official #1 to look at or reconsider the Microtel, without pressuring him or another City official to approve it, that may not be an official act under *McDonnell* and accordingly could be insufficient to support any of the nine quid-pro-quo bribery charges. *Id.* at 572–74.

The line between what is and is not criminal under the corruption law makes it especially important for the government to provide notice to the defense as to the specific quo an official is alleged to have engaged in, and when and where it occurred. *See, e.g.*, *McDonnell*, 579 U.S. at 580 (noting that conduct the government may object to or find "tawdry" cannot be charged as a crime except under specific circumstances). Indeed, even in *Espy*, which was decided before *McDonnell*, the court held that the government must provide "the conduct, date, place and substance of each official act referred in the indictment" to avoid unfair surprise at trial. *Espy*, 989 F. Supp. at 34–35.

Indictments in other recent public corruption cases (but not this one) include precisely this type of detail. For example, the *Skelos* indictment catalogs in detail each of the official acts taken by New York Senate Majority Leader Dean Skelos in return for payments to his son, including the individuals with whom Skelos met, the legislative proposals that he supported and voted for, the budget changes he attempted to secure, and the meeting that he directed his staff to coordinate.

*See United States v. Skelos*, Superseding Ind. ("Skelos Ind.") ¶ 27, No. 15-cr-317 (S.D.N.Y. July 21, 2015). The *Menendez* indictment specifies exactly what the alleged official acts entailed, the precise dates of those acts, the individuals with whom Menendez communicated, and what Menendez said to those individuals. *See, e.g.*, Menendez Ind. ¶¶ 20, 30, 42, 44, 47–50, 53. The *Silver* indictment details the official acts taken by New York Assembly Speaker Sheldon Silver, including the specific legislation Silver voted on and supported and the specific state grants that Silver directed to recipients in exchange for payment. *See United States v. Silver*, Superseding Ind. ("Silver Ind.") ¶¶ 13, 23, No. 15-cr-093 (S.D.N.Y. Apr. 23, 2015); *see also United States v. Silver*, 948 F.3d 538, 559 (2d Cir. 2020) (holding that "an open-ended promise to perform official actions 'for the benefit of the payor'" is an insufficient theory of bribery). Likewise, the Halloran indictment details precisely what constituted the alleged official acts committed by Halloran in his capacity as a New York City Council Member, the exact dates on which he committed those acts, and with whom he communicated in committing the acts. *See* Halloran Ind. ¶¶ 23–24.

If the government's theory is that something said on the phone call between Frank Carone and City Official #1 on September 22, 2022 constitutes the official act underlying the bribery charges, Defendants are entitled to know as much, including at least the substance of what the government contends was said during that call. *See Lino*, 2001 WL 8356, at *6 (granting bill of particulars as to the "nature and circumstances" of the communications underlying the alleged bribery scheme); *United States v. Aliperti*, 867 F. Supp. 142, 149 (E.D.N.Y. 1994) (finding defendants entitled to particularization as to "what specific official acts the Defendants allegedly agreed to perform" and "when and where these agreements occurred"); *United States v. Ramirez*, 602 F. Supp. 783, 786 (S.D.N.Y. 1985) (defendant entitled to particularization about date, time, and location of his involvement in conspiracy where government alleged he participated in one

phone conversation without additional detail).

Likewise, if the government's theory is that the official act took place during the in-person meeting between Frank Carone and City Official #1 that the Indictment alleges occurred on September 28, the government should be required to state as much, including the substance of what Frank Carone allegedly said or did during that meeting. *See id.* And if the government intends to characterize any other conduct as an official act, it should disclose the particulars of that conduct. *See id.*; Skelos Ind. ¶ 27; Menendez Ind. ¶¶ 20, 30, 37, 42, 44, 47–50, 53; Silver Ind. ¶¶ 13, 23; Halloran Ind. ¶¶ 23–24. As explained above, particulars are critical here because if Frank Carone asked City Official #1 to "reconsider" the Microtel, without using his official power to pressure him or another City official to approve it, that may well not constitute a crime. The government should not be permitted through a carefully worded Indictment to avoid stating with specificity what Frank Carone did that makes the alleged conduct criminal—particularly in light of discovery and Brady disclosures that provide a clear non-criminal explanation for how the Microtel was approved for the emergency housing contract.

## III. The Indictment Fails to Adequately Specify Whether the Obstruction of Justice Count Is Limited to the Conduct Alleged in Paragraph 47 of the Indictment.

Finally, the government should be required to confirm that the obstruction charge in Count Ten of the Indictment is limited to the conduct alleged elsewhere in the Indictment. Count Ten broadly alleges that, between July 2024 and October 2025, Frank and Anthony Carone obstructed, and attempted to obstruct, a federal grand jury investigation—without specifying the alleged conduct underlying this charge. Ind. ¶ 64. Indeed, Count Ten does not include any "to wit" clause at all explaining what conduct is being charged.

This "bare bones" obstruction count is "insufficient on its face to provide [defendants] with sufficient detail to defend adequately the charges against [them] at trial." *United States v. Barnes*,

158 F.3d 662, 665 (2d Cir. 1998); *see also Bortnovsky*, 820 F.2d at 574 (district court erred in denying bill of particulars motion where "appellants were hindered in preparing their defense by the district court's failure to compel the Government to reveal crucial information"). To avoid the possibility of a roving government theory of obstruction, the government should be required to specify the basis for the charge—in particular, whether it is limited to the allegedly fabricated promissory note described in Paragraph 47, or whether the government intends to rely on a different theory of obstructive conduct at trial. The Indictment appears to be written deliberately to leave the door open.

Courts routinely grant motions for bills of particulars seeking such detail about the charged offense to prevent unfair surprise at trial. *See Lino*, 2001 WL 8356, at *5 ("[T]he Government is directed to specify all other categories of conduct, if any, constituting 'means and methods' by which the alleged enterprise operated and not otherwise set forth in the indictment"); *Nekritin*, 2011 WL 1674799, at *8 (ordering the government to provide particulars in a conspiracy case because "[w]ithout it, the defendants are left to determine which claims for which beneficiaries are alleged to form the basis of the health care fraud conspiracy, and to defend legitimate claims unrelated to the conspiracy charge, which would impermissibly shift the burden of proof to the defendants"); *United States v. Rinsch*, 807 F. Supp. 3d 238, 252–53 (S.D.N.Y. 2025) (directing the government to provide "a written specification of each of the materially false statements that it will contend at trial were made by the defendant or his agents" where government's prior disclosures were "neither 'exhaustive' nor 'exclusive,'"); *Barnes*, 158 F.3d at 665 (bill of particulars appropriate where indictment fails to provide necessary details of the charged offense). *United States v. Scully*, No. 14-CR-208 (ADS) (SIL), slip op. at 110–11 (E.D.N.Y. June 8, 2015) (granting request for bill of particulars and requiring the government to state the specific fraudulent

allegations in each count).

In other cases charging obstruction, the government has voluntarily provided particulars about the alleged wrongdoing that forms the basis for the charged offense. For instance, in *United States v. St. Germain*, the indictment charged defendant LaSpina with obstruction of justice arising out of the destruction and concealment of documents. 33 F. App'x 565, 566 (2d Cir. 2002). Upon the defendant's request, the government voluntarily provided a bill of particulars detailing the precise documents that LaSpina allegedly destroyed and concealed. *See* Brief for Appellee at *13–14, *United States v. St. Germain*, No. 01-1039, (2d Cir. May 16, 2001), 2001 WL 34284344. Likewise, in *United States v. Kaplan*, in response to the defendant's request for a bill of particulars as to which false statements formed the basis of a particular count, the government voluntarily identified the exact statements from defendant's post-arrest statement underlying that count. 490 F.3d 110, 128 (2d Cir. 2007).

Accordingly, the Court should require the government to state whether its obstruction theory is limited to the alleged promissory note scheme described in Paragraph 47 of the Indictment, and if not, to identify any additional alleged obstructive conduct it would use to prove Count Ten, including the date, location, and nature of any alleged obstructive act committed. *See Ramirez*, 602 F. Supp. at 793 (granting bill of particulars and instructing the government to provide date, time, and location where defendant allegedly violated the law).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court order the government to provide a bill of particulars specifying the following:

1. As to the alleged corrupt agreement: the date on which the alleged corrupt agreement between Frank Carone and Mr. Zhu was formed, the location in which the alleged

agreement was entered, and the specific communication, meeting, or event that constituted formation of that agreement;

2. As to the alleged official act(s): each official act alleged to have been taken by Frank Carone pursuant to the alleged corrupt agreement that the government will contend at trial constitutes official action within the meaning of 18 U.S.C. § 666(a)(1)(B) and the honest services wire fraud counts, and the date on which any such official act(s) occurred; and

3. As to the obstruction-of-justice count (Count Ten): confirmation that the charged conduct in Count Ten is limited to the conduct described in Paragraph 47 of the Indictment, or in the event the government intends to rely on conduct beyond Paragraph 47 of the Indictment, what that conduct was and when it occurred.

Dated: New York, New York
August 25, 2026

Respectfully submitted,

**COOLEY LLP**

By: */s/Andrew D. Goldstein*
Andrew D. Goldstein

Russell Capone
Rona S. Proper
55 Hudson Yards
New York, New York 10036
Phone: (212) 479-6000
Email: agoldstein@cooley.com
rcapone@cooley.com
rproper@cooley.com

**AGNIFILO INTRATER LLP**

Marc A. Agnifilo
Jacob Kaplan
Karen Firedman Agnifilo
Zach Intrater
140 Broadway, Suite 4530
New York, New York 10036
Phone: (646) 205-4350
Email: marc@agilawgroup.com
jacob@agilawgroup.com
karen@agilawgroup.com
zach@agilawgroup.com

**AIDALA, BERTUNA & KAMINS, P.C.**

Arthur L. Aidala
546 Fifth Avenue
New York, New York 10036
Phone: (212) 486-0011
Email: aidalaesq@aidalalaw.com

*Attorneys for Defendant Frank V. Carone*

**JENNER & BLOCK LLP**

Katya T. Jestin
Andrew Rohrback
1155 Avenue of the Americas
New York, New York 10036
Phone: (212) 891-1623
Email: kjestin@jenner.com
arohrbach@jenner.com

**WHARTON LAW PLLC**

Kendra Wharton
500 S. Australian Ave
West Palm Beach, Florida 33401
Phone: (561) 247-5279
Email: k.wharton@whartonlawpllc.com

**WENGER & ARLIA LLP**

John Arlia

20 Vesey Street, Suite 210
New York, New York 10007
Phone: (212) 566-6262
Email: john.arlia@yahoo.com

*Attorneys for Defendant Anthony J. Carone*

**COZEN O'CONNOR**

J. Bruce Maffeo
3 WTC, 175 Greenwich Street
Ste 55th Floor
New York, New York 10007
Phone: (212) 883-4951
Email: jbmaffeo@cozen.com

**MATTHEW WHITNEY BRISSENDEN**

Matthew W. Brissenden
666 Old Country Road, Suite 501
Garden City, New York 11530
Phone: (516) 817-4551
Email: mbrissenden@scaringlaw.com

**STEPHEN P. SCARING P.C.**

Stephen P. Scaring
666 Old Country Road, Suite 501
Garden City, New York 11530
Phone: (516) 683-8500
Email: sscaring@scaringlaw.com

*Attorneys for Defendant Yan Po Zhu*

**JOHN CARMAN ESQ.**

John F. Carman
66 Old Country Road, Suite 501
Garden City, New York 11530
Phone: (516) 683-3600
Email: john@johncarmanlaw.com

*Attorneys for Defendant Crystal Chen*

**CERTIFICATION PURSUANT TO LOCAL CRIMINAL RULE 16.1**

Pursuant to Local Criminal Rule 16.1, counsel for Defendant Frank V. Carone, certifies that counsel has conferred with counsel for the government in a good-faith effort to resolve by agreement the issues raised in this Motion without the intervention of the Court, but the parties were unable to reach an agreement.

*/s/ Andrew D. Goldstein*
Andrew D. Goldstein