United States District Court
Eastern District of New York

-----------------------------------X

United States of America,

- against -

**Memorandum & Order**

No. 26-cr-177 (KAM)

Anthony J. Carone,
Frank V. Carone,
Crystal Chen, and
Yan Po Zhu, AKA "Andy Zhu",

Defendants.

-----------------------------------X

**Kiyo A. Matsumoto, United States District Judge:**

On June 12, 2026 a grand jury returned a thirteen-count, twenty-nine page speaking Indictment charging four defendants—Anthony Carone, Frank Carone, Crystal Chen, and Yan Po Zhu—with offenses related to a corrupt quid pro quo pursuant to which F. Carone, in his capacity as Chief of Staff to the Mayor of New York City, allegedly agreed to steer an Emergency Shelter Contract to a Microtel owned by Zhu in exchange for payment.

Pending before the Court are Defendants' joint motion for a bill of particulars (ECF No. 104), the Government's opposition to the bill of particulars motion (ECF No. 108), and Defendants' reply (ECF No. 110).

The Defendants filed their memorandum of law in support of their motion for a bill of particulars under seal and filed a redacted version on the public docket. Also pending before the

Court are Defendants' joint motion to unseal and file their memorandum of law, without redactions, on the public docket (ECF No. 105), the Government's opposition to the motion to remove redactions(ECF No. 109), and Defendants' reply (ECF No. 112).

For the reasons stated below, Defendants' motions for a bill of particulars and to unseal are denied.

## BACKGROUND

As relevant to the pending motions, the Indictment charges (1) F. Carone with one count of federal program bribery in violation of 18 U.S.C. § 666(a)(1)(B); (2) Crystal Chen and Yan Po Zhu with one count of federal program bribery in violation of 18 U.S.C. § 666(a)(2); (3) all four defendants with one count of conspiracy to commit honest services wire fraud in violation of 18 U.S.C. § 1349; (4) all four defendants with three counts of honest services wire fraud in violation of 18 U.S.C. §§ 1343 and 1346; and (5) F. Carone and A. Carone with one count of obstruction of justice in violation of 18 U.S.C. § 1512(c)(2). (ECF No. 1 ¶¶ 51–54, 57–60, 63–64.)

The Indictment, inter alia, charges that "[i]n or about and between June 2022 and December 2023," the Defendants "devised and executed a scheme to exploit the City's migrant crisis for profit." (ECF No. 1 ¶14.) And that, in his capacity as Chief of Staff, F. Carone "agreed to steer" the Emergency Shelter Contract to the

Microtel, and that Zhu and Chen paid approximately $120,000 to F. Carone in exchange for the contract. (*Id.*)

The Indictment details that "[b]eginning in 2022," Zhu and Chen tried to obtain the Microtel Contract, but that "[a]t a meeting held on or about June 14, 2022" Chen was informed that the Microtel was not a viable location for an Emergency Shelter Contract. (*Id.* ¶ 16.) "[O]n or about June 3, 2022" Zhu and Carone socialized at Zhu's home, and Zhu solicited F. Carone for his assistance in obtaining the contract; on June 6, 2022, Zhu texted Carone "regarding approval of [his] hotel;" and on June 15, 2022, after Chen and Zhu learned that the Microtel was not a viable location, Chen texted a consultant that Zhu was speaking to someone in the Mayor's office about "another chance." (*Id.* ¶ 16–19.)

"Following [Department of Social Services'] rejection of the Microtel . . . on or about June 14, 2022," F. Carone "used his official position to intercede on the Microtel's behalf" and "directed City Official #1, then the DSS Commissioner, to reconsider the Microtel." (*Id.* ¶ 20.) In August and September 2022, Zhu continued socializing with F. Carone and soliciting his assistance in obtaining the Microtel contract. (*Id.* ¶¶ 22–23, 26–27.) "[O]n or about September 22, 2022," F. Carone spoke to City Official #1, and, after this conversation, an email was by City Official #2 to city staff to consider the Microtel for the contract. (*Id.* ¶ 24.) "[O]n or about October 1, 2022," Chen

"began making a series of monthly payments" to a Law Firm Account operated by A. Carone. (*Id.* ¶ 28.)

On October 4, 2022, City Official #1 texted A. Carone to "reiterate that" the Microtel was not a viable location, however, that same day City Official #2 sent an email requesting that staff contact Chen to discuss the Microtel's eligibility. (*Id.* ¶¶ 29–30.) Throughout October 2022, City Official #1 "continued his efforts to steer" the emergency shelter contract to the Microtel "consistent with the directive he had received" from F. Carone. (*Id.* ¶¶ 30–32.) On October 20, 2022, City hall approved the Microtel contract. (*Id.* ¶ 33.)

The Indictment also outlines the background of Count Ten, Obstruction of Justice, alleging that "between July 2024 and October 2025," A. Carone and F. Carone, corruptly obstructed a federal grand jury investigation in the Eastern District of New York. (*Id.* ¶¶ 63–64.) The Indictment specifies that "[t]o conceal the illegal nature of the bribery scheme . . . F. Carone and A. Carone fabricated evidence" to create the impression that payments received as a result of the bribery scheme were actually personal loans made by A. Carone to F. Carone. (*Id.* ¶ 47.) In July 2024, F. Carone and A. Carone created a promissory note which they backdated to January 2022 and gave to federal investigators in October 2025. (*Id.*)

At a July 27, 2026 status conference, defense counsel stated that they anticipated filing a motion for a bill of particulars. The Government indicated that they would discuss the requested information with defense counsel following the conference. On August 4, 2026 the Government told the Defendants:

> As discussed during last Friday's call, we do not believe a bill of particulars is warranted in this case. As you know, a bill of particulars is appropriate only "where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (quoting *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990)). Here, the 29-page indictment contains specific details describing the particulars of the alleged bribery scheme. It includes relevant text messages, Ind. ¶¶ 18-19, 23, 26-27, 29, 45-46, 50(a)-(b), 50(d), emails, *id.* ¶¶ 44, 50(c), financial transfers, *id.* ¶ 50(e), telephone calls, id. ¶ 24, and meetings, *id.* ¶¶ 16, 27[.] Because the law does not entitle you to additional information, we respectfully decline your request.

(ECF No. 104-1 at 4). The Defendants then filed this motion for a bill of particulars, seeking particulars in three areas: (1) when and where the alleged corrupt agreement was formed; (2) the official acts taken by F. Carone pursuant to the alleged corrupt agreement; and (3) whether the obstruction of justice count (Count 10) is limited to the conduct alleged in paragraph 47 of the Indictment. (*Id.* at 11–18.)

Along with their motion for a bill of particulars, Defendants also seek leave to file a version of their motion without redactions on the public docket. (ECF No. 105.) The Government

construes this motion as a motion to unseal and opposes the motion. (ECF No. 109.) Prior to filing their motion for a bill of particulars, Defendants advised the Government that they intended to cite certain witness statements and a letter from the Government disclosing certain *Brady* material. The Government, however, declined to agree to the disclosure of the anonymized statements, and the Defendants redacted, from their memorandum in support of their motion for a bill of particulars, portions of pages seven through nine of the memorandum filed on the public docket. (*Id.*) Defendants now argue that the unredacted material should not be maintained under seal.

## **LEGAL STANDARD**

### **I. Bill of Particulars**

Under Federal Rule of Criminal Procedure 7(f), a defendant may "seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling [the] defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (per curium) (first citing *Wong Tai v. United States*, 273 U.S. 77, 82 (1927) then citing *United States v. Glaze*, 313 F.2d 757, 759 (2d Cir. 1963)); *see also United States v. Rigas*, 490 F.3d 208, 237 (2d Cir. 2007) (citing *United States v. Davidoff*, 845 F.2d 1151, 1154

(2d Cir. 1988)). A bill of particulars is only required "where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (quoting *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990)).

The information sought must be necessary, not just merely helpful. *United States v. Raniere*, 384 F. Supp. 3d 282, 322 (E.D.N.Y. 2019) (citing *United States v. Facciolo*, 753 F. Supp. 449, 451 (S.D.N.Y. 1990)). "[A] bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means." *Walsh*, 194 F.3d at 47 (citing *Torres*, 901 F.2d at 234 and *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984)). Nor is a bill of particulars meant to act as a substitute for a form of discovery or a tool to preview the government's evidence before trial or learn of the legal theory animating the government's case. *United States v. Cobb*, 544 F. Supp. 3d 310, 326 (W.D.N.Y. 2021) (citing *United States v. Henry*, 861 F. Supp. 1190, 1197 (S.D.N.Y. 1994)); *Raniere*, 384 F. Supp. 3d at 322. Courts have also consistently denied demands for a bill of particulars about the formation of a conspiracy, *Cobb*, 544 F. Supp. 3d at 327, and have frequently held that the nature of the "wheres, whens, and with whoms of a conspiracy are . . . beyond the scope of a bill of particulars." *Raniere*, 384 F. Supp. 3d at 322 (internal citation omitted).

"The defendant bears the burden of showing that the information sought is necessary and that he will be prejudiced without it." *Raniere*, 384 F. Supp. 3d at 322 (quoting *United States v. Fruchter*, 104 F. Supp. 2d 289, 312 (S.D.N.Y. 2000)) (citation modified). The court "must examine the totality of the information already available to the defendant—through the indictment, affirmations, and general pre-trial discovery." *Id.* (first quoting *United States v. Bin Laden*, 92 F. Supp. 2d 225, 233 (S.D.N.Y. 2000) then citing *Bortnovsky*, 820 F.2d at 574). "The decision of whether or not to grant a bill of particulars rests within the sound discretion of the district court." *Bortnovsky*, 820 F.2d at 574.

**II. Motion to Seal**

There is a "common law right of public access to judicial documents [that] is firmly rooted in our nation's history." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (citing *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I")). A judicial document is a filing that is "relevant to the performance of the judicial function and useful in the judicial process." *Amodeo I*, 44 F.3d at 145.

"Once the court has determined that the documents are judicial documents and that therefore a common law presumption of access attaches, it must determine the weight of that presumption." *Lugosch*, 435 F.3d at 119. "The weight of the presumption is a

function of (1) the role of the material at issue in the exercise of Article III judicial power and (2) the resultant value of such information to those monitoring the federal courts, balanced against competing considerations." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016) (internal quotation marks omitted). These competing considerations can include "the danger of impairing law enforcement or judicial efficiency" and "the privacy interests of those resisting disclosure." *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir.1995) ("*Amodeo II*")).

## APPLICATION

### I. Motion for a Bill of Particulars

#### A. When and Where the Alleged Corrupt Agreement Was Formed

Defendants request particularization of the date, time, and location of the alleged corrupt agreement, arguing that the timing of the agreement "is the key" in federal-program bribery cases. (ECF No. 104-1 at 11–12 (quoting *Snyder v. United States*, 603 U.S. 1, 19 (2024)). Defendants assert that "[w]hether the alleged corrupt agreement was formed before or after Frank Carone's purported official act(s) to benefit the Microtel is not an evidentiary detail or a question of the manner of proof" and that the Indictment does not specify whether the alleged corrupt agreement was formed before or after F. Carone took action to benefit the Microtel. (ECF No. 110 at 3.)

Defendants are correct that the timing of an agreement is critical for federal bribery cases, but only insofar as bribery requires that a defendant agree to accept something of value prior to the contemplated or consummated action. *See Snyder*, 603 U.S. at 18–20 (explaining that it is the timing of the agreement and not the timing of the payment that distinguishes an unlawful bribe from a lawful gratuity). Though specific dates and times on which agreement between the parties was reached might aid the Defendants in their preparation, this information is not "necessary" for their defense.

The Indictment, in addition to the evidence quoted in the Government's submission, sufficiently alleges facts that F. Carone received payments in exchange for directing City employees to reconsider the initial denial of the Microtel contract. *See United States v. Starks*, No. 24-cr-126, 2024 WL 4528169, at *5 (S.D.N.Y. Oct. 18, 2024) (rejecting request for bill of particulars detailing "specific dates" on which agreement was allegedly reached, where indictment was sufficiently clear in "alleging the payment of bribes in exchange for" benefits under *Snyder* and defendant could "prepare his defense accordingly"). And, as the Second Circuit has noted, "evidence of a corrupt agreement in bribery cases is usually circumstantial, because bribes are seldom accompanied by written contracts, receipts or public declarations of intentions." *United States v. Friedman*, 854 F.2d 535, 554 (2d Cir. 1988).

Defendants cite to numerous cases involving federal bribery and conspiracy charges in which a bill of particulars was ordered. Courts in this Circuit have recognized that, in "complex conspiracy cases . . . the potential for unfair surprise and the difficulty of preparing a defense are amplified." *United States v. Rajaratnam*, No. 09-cr-1184 (RJH), 2010 WL 2788168, at *2 (S.D.N.Y. July 13, 2010) (complexity of case and volume of documents made it necessary to clarify some allegations and to provide direction on certain documents). Here, unlike the cases Defendants cite, the charges are relatively straight forward; for instance, there is no issue of multiple unindicted and unnamed co-conspirators. *See United States v. Patterson*, No. 02–cr–0283, 2002 WL 31890950, at *10 (S.D.N.Y. Dec. 27, 2002) (denying bill of particulars where indictment charged a "straightforward ... marijuana distribution scheme" over a period of approximately six months as opposed to a more complex conspiracy involving a large number of co-conspirators and a number of distant and distinct schemes). In sum, the additional "wheres, whens, and with whoms" sought by Defendants here "are of the type 'routinely denied' in the Second Circuit." *United States v. Horge*, No. 19-CR-96 (LTS), 2020 WL 6273932 at*3 (S.D.N.Y. Oct. 26, 2020) (citing *United States v. Ma*, No. 03-cr-734 (DAB), 2006 WL 708559, at *14 (S.D.N.Y. Mar. 21, 2006)); *see also United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004) (district court did not abuse its discretion in denying

defendant a bill of particulars as to the "exact time and place of each alleged act associated with each offense identified in the indictment"). Defendants' motion seeking specifics on when the alleged corrupt agreement was formed is respectfully denied.

**B. Official Acts**

Defendants next argue that "each of the bribery and honest services fraud charges requires proof that Frank Carone performed a specific official act in exchange for the alleged payments," and that the Government should be required to provide specifics regarding the alleged official acts performed by F. Carone. (ECF No. 104-1 at 13.)

The indictment alleges that on June 14, 2022, F. Carone gave a "directive" to City Official #1 that City Official #1 "reconsider" the Microtel for a contract. (ECF No. 1 ¶ 20.) Defendants argue that if Frank Carone gave a directive to City Official #1 that would be an impermissible official act, but, in contrast, if F. Carone "simply asked City Official #1 to look at or reconsider the Microtel, without pressuring him or another City official to approve it, that may not be an official act." (ECF No. 104-1 at 14.)

As an initial matter, 18 U.S.C. § 666 criminalizes bribery and applies to state and local officials. It was passed by Congress in response to confusion about whether the general federal bribery provision under Section 201 extended to state and local

officials. *See Snyder*, 603 U.S. at 8 (explaining the statutory history of § 666). Although 18 U.S.C. § 201(b)(2)(A) uses the term "official act" in its text, § 666(a)(1)(B) (under which the Defendants are charged), does not. Section 201(b)(2)(A) prohibits the acceptance of "anything of value ... in return for being influenced in the performance of *any official act.*" 18 U.S.C. § 201(b)(2)(A) (emphasis added). By contrast, § 666 prohibits bribery "'in connection with any business, transaction, or series of transactions of [an] organization, government, or agency.'" *United States v. Ng Lap Seng*, 934 F.3d 110, 133 (2d Cir. 2019) (emphasis omitted) (quoting 18 U.S.C. § 666(a)(1)(B)). The Second Circuit, in *Ng Lap Seng*, noted that, "[n]owhere does § 666 mention 'official acts,' and expressly held "that the *McDonnell* 'official act' standard, derived from the *quo* component of bribery as defined by § 201(a)(3), does not necessarily delimit the *quo* components of other bribery statutes, such as § 666." *Id.* at 132-33 (also noting the "textual differences among various bribery statutes"). "Thus, while § 201 requires an official act—a formal exercise of governmental power with respect to a specific and focused matter to be decided upon—the Second Circuit has been unequivocal that § 666 does not." *United States v. Adams*, 760 F. Supp. 3d 6, 17 (S.D.N.Y. 2024). Accordingly, requiring the Government to state what official act F. Carone took is not necessary for the defense

of the bribery charges under § 666, and the motion is denied on this ground.

As to the honest services wire fraud charges, "honest services fraud convictions require evidence demonstrating that: (1) the defendant violated a fiduciary duty to another party in agreeing to a quid pro quo; (2) the defendant understood, at the time of the quid pro quo, on which specific question or matter the briber expected him to act; and (3) the action that the defendant agreed to take in exchange for the bribe was an official act." *United States v. Mangano*, 128 F.4th 442, 471 (2d Cir. 2025). Defendants rely heavily on the Supreme Court's *McDonnell* decision to argue that the Government has not adequately alleged that F. Carone took an official act, however, *McDonnell* expressly recognizes that using one's official position "to exert pressure on another official to perform an 'official act,'" can meet the definition of an official act. *McDonnell v. United States*, 579 U.S. 550, 572, 574 (2016).

Here, the Indictment plainly alleges that F. Carone, "in his official capacity as Chief of Staff, F. Carone directed City Official #1, then the DSS Commissioner, to reconsider the Microtel for an Emergency Shelter Contract." (ECF No. 1 ¶ 20.) The Indictment continues that, "Despite DSS's prior independent assessment that the Microtel was not a suitable location for a temporary shelter, due to F. Carone's directive to reconsider,

City Official #1 did, in fact, cause DSS officials to reconsider the agency's decision," which resulted in a contract award to Zhu's Microtel. (*Id.*) Defendants have sufficient notice of the factual and legal charges that the Government will pursue at trial and will be able to adequately defend themselves at trial. The motion for a bill of particulars on this ground is not warranted.

**C. Obstruction of Justice Charge**

Defendants A. Carone and F. Carone further argue that the obstruction charge in Count Ten, that "between July 2024 and October 2025," Frank and Anthony Carone obstructed a federal grand jury investigation, (ECF No. 1 ¶ 64) is too broad. Defendants argue that the government should be required to specify whether the basis for this charge is limited to the allegedly fabricated promissory note described in Paragraph 47 of the Indictment, or whether the government intends to rely on a different theory of obstructive conduct at trial.

Paragraph 47 of the Indictment states, in its entirety:

> By spring 2024, the defendants Frank V. Carone and Anthony J. Carone had become aware of a federal Grand Jury investigation. To conceal the illegal nature of the bribery scheme described herein and otherwise obstruct the investigation, F. Carone and A. Carone fabricated evidence to create the impression that the payments from Law Firm #2 to F. Carone's personal credit card account and to Law Firm #1 were personal loans made by A. Carone to F. Carone. As part of that scheme to obstruct, in approximately July 2024, F. Carone and A. Carone created and executed a document purporting to be a promissory note, which they backdated to January 2022, and subsequently provided to federal investigators in

October 2025.

Here, A. Carone and F. Carone are charged with obstruction of justice, and the Indictment specifies the way in which they are alleged to have obstructed justice: by creating and causing the submission of a fabricated document to federal investigators. Background as to Defendants' awareness of the federal investigation is provided, and the transaction to which the allegedly falsified document relates is specifically described. Moreover, at the October 1, 2026 hearing, the Government stated that, with regard to paragraph 47, "there [are] other acts that are evidence of that obstructive conduct, but that is the obstructive conduct we have charged," in Count 10. Defendants' counsel affirmed that this statement clarified their understanding of the charged conduct. *See United States v. Barrett*, 153 F. Supp. 3d 552, 571 (E.D.N.Y. 2015)( To determine whether a bill of particulars is warranted, courts may look "beyond the four corners of the indictment" and "determine whether the information sought has been provided elsewhere, such as in other items provided by discovery, [and] responses made to requests for particulars.").

Defendants rely on *United States v. Barnes* to support their request for clarification, quoting its language that a "bare bones" obstruction count is "insufficient on its face to provide [defendants] with sufficient detail to defend adequately the charges against [them]." 158 F.3d 662, 665 (2d Cir. 1998). Unlike

the Indictment at issue here, in *Barnes*, "[n]one of the acts the defendant allegedly undertook . . . [were] alluded to in the conspiracy count or anywhere else in the indictment." Moreover, "the [*Barnes*] indictment provided not a shred of detail," such that "the defendant was entitled to be otherwise apprised of the conduct that he was alleged to have undertaken in furtherance of [the] multi-faceted, if not multiple, conspiracy." *Id.* Here, the Defendants are apprised of the nature of the obstruction charges against them: the Indictment's charges and theory of prosecution are easily understood, and further tailoring is not necessary.

**II. Motion to Unseal**

A redacted version of the Defendants' memorandum of law in support of their motion for a bill of particulars is filed on the public docket. (ECF No. 104-1.) Defendants have filed an unredacted version of their memorandum of law under seal. (ECF No. 105-1.) Defendants move to unseal the unredacted version, arguing that the decision whether to keep redacted portions of their briefing under seal depends on whether the redacted portions are "judicial documents" to which a presumption of public access attaches. (ECF No. 105.)

Usually, the determination of whether a sealed document is a judicial document is made with respect to the entire document. In this case, however, only a small portion of the document is at issue: descriptions of witness statements on pages 7 through 9 of

the Defendants' memorandum in support of their motion for a bill of particulars. (ECF No. 104-1 at 7–9.)

Documents filed with the court that are "relevant to the performance of the judicial function and useful in the judicial process" constitute judicial documents and are presumptively accessible by the public. *Lugosch*, 435 F.3d at 119. "Documents that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach." *Amodeo II*, 71 F.3d at 1045.

Here, the redacted descriptions containing the Government designated confidential information were disclosed pursuant to a protective order during discovery, and were disclosed to the Court in connection with Defendants' motion for a bill of particulars. Courts in this district have held that redacting portions of letter motions that reference "information passed between the parties in discovery" where "the documents [referenced] have been designated" as confidential under a protective order is appropriate. *See Nespresso USA, Inc. v. Williams-Sonoma, Inc.*, No. 19-cv-4223 (LAP) (KHP), 2021 WL 1812199, at *3 (S.D.N.Y. May 6, 2021).

Moreover, the Court's adjudication of the Defendants' motion for a bill of particulars does not rely on the redacted summaries: Defendants' motion for a bill of particulars fails because the Government has provided to Defendants ample information with sufficient particularity to notify Defendants of the nature of the

charges against them so they may prepare for trial, and avoid surprise and double jeopardy. Therefore, the redacted information is not "judicial" for purposes of deciding a motion to unseal and the presumption of public access to the redacted descriptions is minimal. *See Amodeo II,* 71 F.3d at 1050 ("Where testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason.").

Considering the minimal presumption of public access, the Government argues that law enforcement and privacy interests justify redacting the documents. The redactions, as they stand, are narrowly tailored and the information in the descriptions is not essential to the Court's adjudication of the bill of particulars motion. Further, as the Government asserts, unsealing the unredacted information at this juncture would undermine legitimate law enforcement and privacy interests, could chill the potential willingness of witnesses to meet and testify, and jeopardize the fairness of trial. Accordingly, maintaining the unredacted motion under seal is warranted. *See United States v. Kerik*, No. 07-cr-1027 (LAP), 2014 WL 12710346 (S.D.N.Y. July 23, 2014) (sealing of certain documents justified where disclosure might reveal investigatory tactics and might also discourage potential cooperators in ongoing or future Government

investigation).

## CONCLUSION

For the foregoing reasons, the Defendants’ motions for a bill of particulars and to unseal are **DENIED.**

**So ordered.**

Dated: October 14, 2026
Brooklyn, New York

___________________________________
**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York